Cassidy Bros. & Co. v. Elk Grove Land Co.

# Cassidy Bros. & Company v. Elk Grove Land and Cattle Company.

1. FACTORS—*Distinguished from Brokers.*—A factor is one who, having goods in his possession, sells them, usually in his own name, without disclosing that of his principal; while a broker does not have such possession, and acts always in the name of his principal.

2. STOLEN PROPERTY—*Purchaser of—Liability.*—The rule is uniform in this country that the purchaser of stolen property, though sold by him to another party, is liable in an action of trover for its conversion.

3. SAME—*Commission Men in Selling—Liable in Trover.*—A firm of commission men received a lot of cattle shipped from Kansas, and sold the same according to the usual course of its business. The cattle had been stolen, and the owner traced them to the commission men, who, upon inquiry, refused to give him any information concerning the cattle, to enable him to trace them. He then brought a suit in trover against the commission men for a conversion of the cattle and recovered.

4. CONTRACT—*For Keeping Cattle Ceases to be Operative, When.*—A contract with a person for the keeping and feeding of cattle until a specified date, ceases to be operative if the person keeping the cattle steals them, and the owner may sue for the cattle without waiting for the expiration of the time fixed by the contract.

5. MEASURE OF DAMAGES—*Conversion of Cattle.*—Where cattle are converted to one's use and sold by him, the measure of damages is the value of the cattle at the time of the conversion, with interest thereon to the date of the trial.

Trover.—Appeal from the Circuit Court of St. Clair County; the Hon. ALONZO S. WILDERMAN, Judge, presiding. Declaration in trover; plea of the general issue; jury waived and trial by the court; finding and judgment for plaintiff; appeal by defendant. Submitted at the August term, 1894. Affirmed. Opinion filed March 23, 1895.

APPELLANT'S BRIEF, McDONALD & HOWE AND L. H. HITE, ATTORNEYS.

Where the factor, acting in good faith and in the course of business, has sold the goods as agent thereby and has paid over the proceeds to his consignor without notice that he is not the owner, he can not subsequently be held to the owner for a conversion. Mechem on Agency, 1050; Roach v. Turk, 9 Heisk. (Tenn.) 708; 24 Am. Rep. 306.

In actions of trover, it is essential that the plaintiff, at the

time of the alleged conversion of the property, have had not only the right of property in the chattel, but the right to the immediate possession of the same. 2 Greenleaf on Evidence, Sec. 636.

APPELLEE'S BRIEF, DILL & SCHAEFER, ATTORNEYS.

Appellee contended that the case of Fawcett v. Osborn, 32 Ill. 411, is, in its facts, very nearly like the case at bar, and settles the law in favor of the appellee. See also, Burton v. Curyea, 40 Ill. 320; Gibbs v. Jones, 46 Ill. 319; Klein v. Seibold, 89 Ill. 540; McCully v. Hardy, 13 Ill. App. 631; Hutchinson v. Oswald, 17 Ill. App. 28; Montague v. Ficklin, 18 Ill. App. 99; Ellsner & Co. v. Radcliffe, 21 Ill. App. 195; 6th Wait's Actions and Defenses, Sec. 1, page 163.

The owner of stolen property can maintain an action for its value against a party who has innocently purchased it and resold it in good faith. Sharp v. Parks, 48 Ill. 511.

It is not necessary to render one liable in trespass or trover, that there should be an appropriation of the thing to the party's own use or beneficial enjoyment. The disposing or assuming to dispose, of another man's goods, without his authority, is a conversion of them. Mead v. Thompson, 78 Ill. 62.

An agent, auctioneer, officer, sheriff, constable or private person who sells stolen goods is liable in trover. Cooley on Torts, pages 448, 451; 6 Wait, 140, 141, 164, 167.

MR. JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

On October 1, 1893, the appellee placed two hundred and fifty head of cattle in the care of J. F. New, under a written contract, to be fed and cared for on his farm near Derry, Kansas, until about the first of May, 1894. On October 15, 1893, New, fraudulently and without authority, shipped forty-nine head of these cattle to appellants, who were live stock commission men at East St. Louis, Illinois. The cattle arrived at said city on the 16th day of October, and were unloaded in the yards of the National Stock Yards Co., where they remained until sold the next day by an agent

of appellants to Herroitt & Co., for $957.57, to whom they were delivered. The net proceeds of the sale after deducting freight, yardage, feed and commissions amounted to $746.50, which was paid to one Davis, in whose name the cattle were shipped. This money was paid by Davis to New. The appellants had no notice of any fraud, or that Davis was not the owner of the cattle.

The appellee did not learn of the loss of the cattle until about the middle of December when 'New was arrested for embezzlement and pleaded guilty. The cattle were traced to appellants, of whom inquiry was made as to whom the cattle had been sold, with a view of recovering them, but they declined to furnish any information, deeming the inquiry an impertinence. The cattle could not be traced any further, and this suit was brought in trover for their conversion. There is no doubt but that appellants acted in entire good faith, and made the sale of the cattle as commission men in the usual course of business. They should, however, have given appellees full information in regard to their cattle after they learned the cattle had been stolen.

The defense interposed by them now is, that being mere factors in making the sale, they are not liable in this action for conversion. The authorities are not entirely uniform as to the law of liability in a case like this. A factor is said to be one who, having the goods in his own possession, sells them usually in his own name and without disclosing that of his principal; while a broker does not have such possession and acts always in the name of his principal. Notes to Biglow v. Walker, 58 Am. Dec. 159. Factors, more than any other kind of agents, have dominion over the property they sell. They can sue in their own name, for the price of goods sold by them. Wharton on Agency, Sec. 755. The law would not afford them relief where it would not other agents. The Supreme Court of this State has not yet decided the law of liability of agents in a case like this, so far as we have been able to discover. The case of Fawcett v. Osborn, 32 Ill. 411, so strongly relied on by appellee, was based on a suit against the purchaser of the goods, which is true of all the other Illinois cases cited.

The rule is uniform in this country, that the purchaser of stolen property, though sold by him, is liable in an action of trover for its conversion.

The most elaborate discussion of the question of the liability of an agent that we have observed is found in the case of Hoffman v. Carow, 22 Wend. 285, by the Court of Errors of New York. There an auctioneer had sold stolen property and after the most careful and exhaustive investigation, it was held, the auctioneer, though entirely innocent of wrongdoing, and having made the sale in the usual course of business, was liable.

The same rule of liability as to auctioneers is laid down by the Supreme Court of Michigan, in Kearney v. Clutton, 59 N. W. 419.

In Consolidated Co. v. Curtis, 1 Q. B. 494, decided in 1892, auctioneers under a similar state of facts were held liable.

The same rule is laid down in Lafayette Co. Bank v. Metcalfe, 40 Mo. App. 494. It is there said, if an agent sells the property of another and thereby cuts off the owner's power to recover the same, or renders the person holding it liable therefor, he will be liable for conversion, notwithstanding his ignorance of the real ownership of the property. See, also, Baker v. Beers, 64 N. H. 102.

The rule announced in the foregoing cases seems to have been generally adopted in this country. It is based on the principle that one who has no title or right to property can not pass it to another, and that he who exercises dominion over the same, though temporarily, in attempted aid of such transfer, is guilty of conversion. As against this view, it is urged that such a rule imperils great commercial interests, and that those great agencies by which property is necessarily transferred from seller to buyer, should not be required to investigate title to the property handled at the peril of liability for its value. There is much force in this contention, which has been exhaustively discussed in the cases referred to, and yet, in principle, it is difficult to see why, if the innocent purchaser of stolen property is liable, the agent, who should know better than he, the title, and who induced

Cassidy Bros. & Co. v. Elk Grove Land Co.

the purchase, should not also be equally liable. If the purchaser is guilty of a tort, the one who suggests it and aids in its commission, according to the fundamental rules of law is equally guilty. There are no agencies in torts. Many other cogent reasons are stated for this rule of liability, some of them founded upon the fundamental principles of the right of property, and others on public policy. The only case cited by appellants sustaining a contrary view is that of Roach v. Turk, 9 Heiskell (Tenn.) 208. It holds that in order to make the factor liable, demand must be made on him, while the property, or its proceeds, are in his hands, or notice of defective title must, during such time, be brought to his attention, for it is said the factor has no knowledge of the title, nor has he the means of knowledge. This reasoning is not satisfactory, for the factor certainly has a better opportunity to know the title of the property he sells than the one whom he induces to buy it, which buyer, this case concedes, would be liable for conversion, though he had sold it in absolute good faith.

The case in hand, in its facts, illustrates the necessity for the rule of liability laid down by the authorities. This appellee, the plaintiff below, sought of appellants information so they might trace the cattle and obtain possession thereof, which was deemed an impertinence. By reason of such refusal the appellee could not find its cattle. Had it been able to find them, unquestionably replevin could have been maintained for their recovery. The conduct of these appellants balked appellee in its efforts in that direction. The parties who shipped them were evidently worthless, so appellee was without any effective remedy, if it could not maintain an action against appellants. The appellants, doubtless, will not in the future deem such inquiries as were made by appellees, impertinent.

Such conduct is made the basis, in one of the cases referred to, for holding agents liable, for it is said, in effect, the owners would not be able to follow their property, if there was no inducement for the agents to aid them, and therefore, on the ground of public policy as well as of principle, they should be held liable.

It is suggested by appellants that the contract between appellee and New, for the feeding and care of the cattle, was in the nature of a mortgage, which should have been recorded.

It has none of the features of a mortgage. This position is not tenable.

It is also suggested that as New, by the contract, had the right to the possession of the cattle until May 1, 1894, that the appellees could not maintain this action, having, as claimed, no right of possession until the expiration of such time. Suffice it to say that the contract ceased to operate, at least as to these cattle, the moment New stole them. If so as to New, it is equally true as to appellants. Counsel can hardly be serious in presenting such a proposition to the court.

Cross-errors are assigned by appellee on the holding of the court, at the instance of appellants, that, " the conversion complained of was the act of defendants in receiving and selling cattle at East St. Louis, and if they are guilty at all, the basis of the damages recoverable against them, is the value at that time with legal interest." The court rendered judgment on that basis for $976.48. There was proof on the part of appellee that the cattle were worth at Derry, Kansas, on October 15th, the date of their shipment, $30 per head, or $1,470.

The appellee cite the case of Sturgis v. Keith, 57 Ill. 458, and a number of other authorities, holding the rule to be, " that the current or market value of property *at the time* of conversion, with interest from that time until the trial, is the true measure of damages." This rule is exactly applicable to that applied by the court. The conversion sued for was that of appellants and not that of New. It is not questioned but that appellants got the full market price for the cattle at East St. Louis, *at the time* of the conversion *by them.* They were in no way legally connected with the conversion by New. Their act did not relate back to his. No authority is cited in favor of that view. They were not legally or morally responsible for what he did.

The judgment is affirmed.