Sarah A. Burns, Plaintiff in Error, v. Henry W. Shoemaker, T. Towar Bates and William F. Whitehouse, Co-partners as Shoemaker, Bates & Co., Defendants in Error.

## Gen. No. 16,679.

1. BROKERS—*liability for proceeds of sale of stolen stock.* A stockbroker selling certificates of stock which are endorsed in blank, received by him for sale from one who has stolen them, is guilty of conversion thereof, and is liable to the true owner, although the thief may have represented himself to be the true owner, and the broker acted in good faith, and without notice of the theft, made the sale and paid the thief the net proceeds thereof.

2. TROVER AND CONVERSION—*measure of damages.* The proper measure of damages in trover for the conversion of personal property, including stock, is the current market value of the property at the time of the conversion, with interest from that time until the trial.

3. TROVER AND CONVERSION—*when evidence of market value is admissible.* In trover for the conversion of certificates of stock a stock broker knowing the market value of the stock at all times during the year may testify as to the market value on the date when one of the certificates was transferred upon the books of the corporation.

4. TROVER AND CONVERSION—*when sale of stolen stock as conversion is for the jury.* Where an affidavit in attachment in a

Burns v. Shoemaker et al., 172 Ill. App. 290.

fourth class case in the Municipal Court of Chicago states that a stock broker was "indebted" to the plaintiff and further that he had "converted" certain certificates of stock, and the attachment is dissolved by a recognizance and the case tried as a suit *in personam*, and there is evidence that the broker without knowledge of a theft sold the stock for a thief and paid him the proceeds, there is a sufficient case in trover for conversion to warrant its being passed upon by a jury.

5. MUNICIPAL COURTS—*when attachment is tort action.* Where an affidavit in attachment in a fourth class case in the Municipal Court of Chicago states that the defendants are "indebted" to the plaintiff and that the defendants "converted" certificates of stock to their own use, and the court acquires jurisdiction *in personam* by the entry of a general appearance and the filing of a recognizance to pay any judgment, no written pleadings being required and the affidavit standing as a statement of claim, the action is what the proof makes it, and recovery may be had in trover for conversion.

6. MUNICIPAL COURT—*when jurisdiction in personam acquired in attachment.* Where a defendant enters a general appearance in a fourth class case in the Municipal Court of Chicago, begun by filing an affidavit in attachment, and dissolves the attachment by giving a recognizance to pay any judgment, jurisdiction of the person is acquired and the case becomes one *in personam* as if originally commenced by the filing of *praecipe* for a summons as provided by the Municipal Court act, section 40, the attachment affidavit standing as a statement of claim.

Error to the Municipal Court of Chicago; the Hon. CHARLES N. GOODNOW, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed and remanded. Opinion filed October 3, 1912. Rehearing denied October 17, 1912.

ALBERT H. and HENRY VEEDER and LOUIS C. EHLE, for plaintiff in error.

HARLAN & McCANDLESS, JOHN MAYNARD HARLAN and LEWIS W. McCANDLESS, for defendants in error.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This writ of error was brought to reverse a judgment of the Municipal Court of Chicago, in a fourth

class case, in favor of defendants in error, hereinafter referred to as defendants.

On October 2, 1909, plaintiff in error, hereinafter referred to as plaintiff, filed in said court a certain affidavit for attachment in which plaintiff stated that the defendants were *"indebted* to her, * * * in the sum of $840, upon seven shares of the capital stock of Swift & Company, an Illinois corporation, which were represented by its stock certificates, Nos. D. 30,156 for two shares, D. 14,213, for four shares, and D. 63,009 for one share, all in plaintiff's name, and of which plaintiff was then and there the sole owner, and which the said Shoemaker, Bates & Co., on, to-wit, June 1, 1909, took and *converted* to their own use, and sold and received the proceeds thereof, without the authority of the plaintiff; that said shares were then and there of the value of, to-wit, $120 per share; that defendants are all non-residents of this state," etc. Plaintiff also filed an attachment bond with surety in the sum of $1,680, and an attachment writ issued. The Commercial National Bank was served as garnishee. On October 5, 1909, the *general* appearance of all of the defendants was entered, and a jury trial demanded. On the same day defendants filed a recognizance conditioned that defendants pay plaintiff the amount of "whatever judgment which may be rendered herein against the defendants on a final trial hereof within ninety days after the rendition of such judgment," etc., whereupon the court ordered that the attachment be dissolved and the garnishee discharged.

On the trial of the cause before a jury, counsel for plaintiff, in his opening address, stated that in May, 1909, the stock in question had been sold by defendants without the authority or consent of plaintiff, and that this action was brought to recover from the defendants "the value of that stock which they had con-verted to their own use." From the evidence intro-

duced on behalf of the plaintiff it appears that in the year 1909 the three defendants were engaged in business as stockbrokers in the city of New York, under the firm name of Shoemaker, Bates & Co., acting as agents of others in the purchase and sale of stocks of corporations, and that they had an office in the city of Chicago, where business was conducted through a representative of the defendants, named Follansbee; that plaintiff, in February, 1909, was living with her sister, Mrs. Mary J. Kelly, in Chicago, and at that time, and for several years prior thereto, was the owner of the stock in question; that about March 1, 1909, plaintiff departed from Chicago, leaving the three certificates of stock in the custody of Mrs. Kelly, who kept them in an unlocked drawer of a china cabinet in the dining room of her home with other private papers; that plaintiff returned to Chicago about September 1, 1909, and shortly thereafter saw said certificates in the office of Swift & Company in Chicago; that plaintiff had at no time sold said stock or any part thereof, or authorized anyone to sell the same for her; that plaintiff's genuine signature was on the back of two certificates, Nos. D. 30,156 and D. 14,213, but that the signature on the back of certificate No. D. 63,009, purporting to be her signature, was not her signature; that sometime in the year 1906 she endorsed said two certificates, and delivered them to the husband of her niece, so that he might raise some money thereon for his use; that about two months thereafter said husband returned said certificates to her and that it never occurred to her to erase her said endorsement on the same; that a man named Charles Keppler had a room and boarded at Mrs. Kelly's house from November, 1908, to June, 1909; that both plaintiff and Mrs. Kelly, in January, 1910, in the Criminal Court of Cook county, heard said Keppler say that he had stolen the certificates in question; and that certificate No. D. 30,156 was transferred on the books of Swift & Company on

May 23, 1909, certificate No. D. 14,213 on May 27, 1909, and certificate No. D. 63,009 on June 2, 1909.

Prior to the trial plaintiff filed twelve interrogatories to be aswered by the defendants, and the same were answered by the defendant, T. Towar Bates. Five of those interrogatories were as follows:

"(7)   Did said defendants receive from said Keppler, in the year 1909, shares of the capital stock, of Swift & Company, an Illinois corporation, including certificates for seven shares of the capital stock of said company, in the name of Sarah A. Burns, and if so, when?

(8)   Did said certificates include certificates Nos. D. 30,156, for two shares, D. 14,213, for four shares, and D. 63,009 for one share, in the name of Sarah A. Burns?

(9)   Did Shoemaker, Bates & Co., sell the said shares of stock, and if so, when?

(10)   What was the amount of the proceeds of the sale of said seven shares of stock?

(11)   What was done by said Shoemaker, Bates & Co., with the proceeds of *said shares* of stock?"

Interrogatory 7 was answered as follows:

"7   Affiant has heard, but has no personal knowledge, and, hence, neither admits nor denies that seven of the shares of stock of Swift & Company, which affiant heard Shoemaker, Bates & Co. sold as aforesaid, as agent for Charles Keppler, were issued in the name of Sarah A. Burns."

On the trial counsel for plaintiff read each of the twelve interrogatories before the jury, and the answers to some of them without objection, but when he sought to read in evidence this answer to interrogatory 7, objection was made that it appeared that the witness had no personal knowledge of the facts therein stated, but based his asnwer solely upon what he had heard, and the objection was sustained by the court. The answers to interrogatories 8, 9 and 10 were similarly framed, viz: "Affiant has heard, but

has no personal knowledge, and hence neither admits nor denies that   *   *   *   '', and upon objection being made, were not read to the jury.  The answer to interrogatory 11 was, however, admitted in evidence as follows:

"11   Shoemaker, Bates & Co. turned over the net proceeds of the sale of *said stock*, $722, to said Charles Keppler.''

A witness for the plaintiff, named Babcock, engaged in business in Chicago as a stockbroker during the year 1909, testified that he knew the market value of Swift & Company stock at all times during the year 1909. He was then asked, ''What was the market value of the stock of Swift & Company on May 23, 1909?'' Counsel for defendants objected to the question on the grounds, in substance, that plaintiff's action is in *assumpsit,* she having waived the tort by alleging in her affidavit for attachment that the defendants were ''indebted'' to her, that she cannot recover the market value of the stock in any event, that all she can possibly recover is what defendants got for the stock and ''what the defendants got is in evidence.''

Counsel for plaintiff thereupon repeated his statement made in his opening address, that this suit is an action in *trover* for the conversion of the stock in question.  The court sustained the objection on the ground that the action was in *assumpsit,* and that the measure of damages would be the actual amount which the defendants received for the stock, which amount the court stated, was admitted in the defendants' answers to the interrogatories.  Whereupon, counsel for plaintiff stated, ''Of course, their claim on that then would make them my agent; their taking the money would make them my agent for the matter.''  And the court replied, ''That is the other angle of it exactly. If you make your footprints in the sands of a law suit it is pretty hard to rub them out.''  Whereupon plaintiff rested her case, and on motion of defendants, the

court directed the jury to bring in a verdict for the defendants, which was done, and judgment was entered thereon.

We think it is the law that where a stockbroker sells certificates of stock which are endorsed in blank, received by him for sale from one who has stolen them, he is guilty of conversion thereof, and is liable therefor to the true owner, although the thief may have represented himself to the broker to be the true owner, and the broker acted in good faith and, without notice of the theft, made the sale and paid the thief the net proceeds thereof. Swim v. Wilson, 90 Cal. 126; Bercich v. Marye, 9. Nev. 312; Kimball v. Billings 55 Maine, 147. Counsel for defendants in their brief concede this to be the law, *in an action of trover*, but claim that this was an action *ex contractu*. We also think it is the law that the proper measure of damages in an action of trover for the conversion of personal property, including stocks, is the current market value of the property at the time of the conversion, with interest from that time until the trial. Sturges v. Keith, 57 Ill. 451; Janeway v. Burton, 201 Ill. 78; Cassidy v. Elk Grove, etc., Co., 58 Ill. App. 39.

After a careful review of the record in this case we have reached the conclusion that the trial court erred in directing a verdict for the defendants at the conclusion of plaintiff's evidence. We think a sufficient case in trover for conversion was made by plaintiff to warrant it being passed upon by the jury. And, considering this action as one in trover for the conversion of the stock in question, we also think the trial court erred in not allowing the witness, Babcock, to testify as to the market value of the stock on May 23, 1909, which was the date, as it appeared from the evidence, when one of the certificates of stock was actually transferred upon the books of Swift & Company.

It is contended by counsel for defendants that, as

this action was begun by filing an affidavit in attachment, and as an original attachment cannot legally be sued out in an action *ex delicto,* plaintiff's action must necessarily be one *ex contractu.* But the record shows that defendants entered a *general* appearance, and, after the giving by them of a recognizance in which they agreed to pay "whatever judgment" might be rendered against them, the attachment was dissolved and the garnishee discharged. The case, then, ceased to be one *in rem* and became one *in personam* as completely as if originally commenced by the filing of a *praecipe* for a summons, as provided by Section 40 of the Municipal Court act, the affidavit previously filed standing as the statement of plaintiff's claim. And by the entry of the general appearance of the defendants the court acquired jurisdiction of the persons of the defendants. After an examination of this affidavit or statement, we cannot say that it is insufficient to support an action in trover. While it states that the defendants are "indebted" to the plaintiff, it also states that the defendants "converted" the stock in question to their own use. Furthermore, actions of the fourth class in the Municipal Court are brought without forms of written pleading. And where there are no written pleadings required, "as in a suit before a justice, the action is what the proof makes it, regardless of the name which the plaintiff or the justice may give it." Doherty v. Schipper & Block, 157 Ill. App. 413, 422. In Edgerton v. Chicago, etc. Ry. Co., 240 Ill. 311, which was an action of the fourth class begun in the Municipal Court, the statement of claim appeared to have been made in form as if it were an action on contract, but it was held that the judgment might be upheld as an action of tort. In this case our Supreme Court said (p. 313) : .

"As to this class of cases under the Municipal Court act, where no written pleadings are required, the same rule will govern as controls the form of actions before justices of the peace. We have held that 'it is a well

298    APPELLATE COURTS OF ILLINOIS.

Harman Coal Co. v. C., C., C. & St. L. R. Co. et al., 172 Ill. App. 298.

settled practice that in scuh courts (i. e., where written pleadings are not required,) the party suing need not even name his action, or if misnamed, that will not affect his rights, if upon hearing the evidence he appears to be entitled to recover and the court has jurisdiction of the defendant and of the subject matter of the litigation.' "

For the reasons indicated, the judgment of the Municipal Court is reversed and the cause remanded.

*Reversed and remanded.*